Good morning. My name is Laura McNabb. I represent Mr. Stephen Burnett. May it please the court. Could you please move your microphone up a little bit? Sure. The narrow question before this court is whether Mr. Burnett's 14-page pro se complaint alleges facts sufficient to state a claim for relief under section 1983. Mr. Burnett states two plausible claims, a due process claim and an ex post facto claim. But the government doesn't struggle with the actual substance of his complaint. Instead, the government focuses on relief Mr. Burnett never sought and legal theories he never endorsed. My argument today will focus on two points that are critical to Mr. Burnett's success on appeal. First, Mr. Burnett plausibly alleged a change to the Oklahoma parole guidelines after his plea such that application of those harsher guidelines to Mr. Burnett breached his plea agreement and violated the ex post facto. Well, is he saying that he has a right to the exact same discretionary factors forever that were that he thought existed at the time he pled out to life with possibility of parole? No, Your Honor. He does have the possibility of parole. So and he's had several hearings. So what is it that that violates his due process? The critical change occurred in November of 2013, approximately two weeks after his 2013 parole investigation. Well, was that a real change? Yes, Your Honor. It was a real change. Well, is there any suggestion that up until that time they could not consider the crime that the person had been convicted of? I don't think so. No, Your Honor. We have no reason to think that it wasn't a permissive consideration that the parole board or the parole authorities couldn't consider the nature of the underlying offense. What's critical here is that the amendment in November of 2013 mandated in subsection I that the parole authorities consider the prior criminal record. That mandate... Well, it would be insane not to consider the prior criminal record. It's correct that the prior... I'm sorry, say that one more time. I said I think it would be insane to not, for a parole office, not to consider the crime for which the individual was convicted. And the fact that they said, now, don't forget to consider the crime, you have to do that, in a discretionary... they're not bound. The governor is not bound by either the investigator or the parole board's recommendation. That's correct, Judge Kelly. They're not bound. So nothing affected... What's critical here is in the 12B6 context that Mr. Burnett's complaint contains allegations sufficient to allow a reasonable inference that that change, as applied to him, did have an impact on his suitability, the assessment for his suitability for parole. If you look at the November 2013 parole investigation report that Defendant Denton completed, she recommended him for parole. She cited two reasons in that recommendation. One was that he'd served nearly 20 years of his sentence and that three years he'd had good conduct. In 2016, that same parole investigator did not recommend parole. She didn't mention that he had served three more years of his sentence or that he'd had three more years of good conduct. She mentioned one thing in recommending against parole. That was the heinous nature of his crime. And she listed details in that 2016 report that she knew about and reported in her 2013 report. That's sufficient to raise an inference that the November 2013 amendment change, which occurred two weeks after her 2013 report, as applied to him, that mandate changed her analysis. And this is based, you're still in the due process argument, and you're arguing that there's a breach of the plea agreement. Is that your, is that still what you're arguing? We're arguing that there was a breach of the plea agreement in 2016 when the parole officials applied the new guidelines to Mr. Burnett. All the plea agreement said was he would be sentenced to life with the possibility of parole. He still had that in 2013 with the possibility of parole. In 2013, we agree that he did have the possibility of parole. What's essential when you look at his claim for breach of a plea, breach of his plea agreement is, one, what was the promise? The promise was contained in the very sentence that he bargained for, life with the possibility of parole. His reasonable expectations at the time he entered into that plea was that he would have a genuine, albeit uncertain, opportunity for parole. Well, even if she had said every time along he has the right to parole, he should get parole, if they had been consistent all the way through, that binds nobody. The governor does not have to heed that. That's correct, Your Honor. And so why does it make a difference? Suppose a different parole investigator had come up with this new recommendation without the change in the language that I think was sort of permissive, that you consider everything but you've got to do this too. Would he have a due process right then for breach of a plea agreement? If you're asking if the 2016 report had been completed by a different parole investigator. Either a different parole or the same person had recommended releasing on both. Oh, if recommendation had been that he be considered for parole? Sure. Either way. And he didn't get it. Would he have a claim? His claim for breach of his plea agreement would certainly be much weaker. On the facts in this complaint, there's a reasonable inference that there was a breach. Because as the government performed in 2013 under the old guidelines, he had a genuine opportunity for parole. He cleared the first discretionary hurdle. The parole investigator recommended him for parole. But in 2016, he didn't even clear that first hurdle. Well, but he still had to clear the hurdle with the governor. And you don't, I mean, you don't expect in a plea agreement that the prosecutor can guarantee you that the citizens of the state aren't going to elect a governor that's tough on crime and is going to deny parole to people who have committed violent crimes, right? That's right. And I agree, Judge. And so doesn't, I mean, a lot of what you plug in your complaint is how conservative and tough on crime this governor is. Doesn't that defeat both your due process, both of your due process claims, your breach of plea agreement, and your general due process claim? No, Your Honor. Our argument isn't that he was actually entitled to parole or that under the new guidelines he would get parole. Our argument is that the way the new guidelines were applied to him in 2016 effectively rendered him unsuitable for parole because it was the single consideration that defendant Denton had when she recommended against parole, whereas the same parole investigator under the old guidelines recommended him for parole. Our argument is that effectively her application of those guidelines to Mr. Burnett, whose crime he pled guilty to, was first degree murder. The seriousness of his crime will never change. And now that that's a mandatory requirement for parole consideration, it has effectively rendered him unsuitable for parole. The essence of the promise. He's no more unsuitable for parole now than he was then. The key difference. The fact that the investigator thought that, well, yeah, he's doing a good job here. We'll agree he should be paroled. That's not binding on anybody. Correct. I can't get past that. Under 12B6 or any other rule that it states any kind of a right to have the same parole investigator continue all the way through his sentence or to have a right that once it's recommended for parole will never be changed. That's certainly not what we've alleged. He alleged in his pro se complaint. It's not what we argue here. We do not argue that. That's the effect of the argument, though. You're effectively saying once he's gotten consideration for parole, it can't ever be changed. Respectfully, no, Your Honor. That's not what we're arguing. What we're arguing is that the change in November 2013 for the first time to mandate, to require consideration of the underlying offense for someone like Mr. Burnett, who pled guilty, who gave up his constitutional right to a jury trial, believing that the essence of that promise was that he would have a genuine possibility of parole. In Oklahoma, he's lucky he got that. Well, in 2013, under the old guidelines, when the government performed on its promise, you're right, he did get a genuine opportunity for parole. When those guidelines changed and mandated consideration of that underlying offense, first-degree murder, which will not change, our argument is that sufficient facts to state a reasonable inference that that breached his plea agreement. Did the parole board have to follow the recommendation of the investigator? No, Your Honor, they didn't. So even if the recommendation was based on his heinous crime, I don't think he should get parole, they could have looked at his behavior in prison and said, you know what? Even though he did commit this heinous crime, we're going to recommend parole and see what the governor says. Correct. The parole board does have discretion to. I'm having a hard time seeing the violation that you're arguing. With respect to the plea agreement, the breach of the plea agreement is based on the facts, as he's alleged in his complaint, which allow a reasonable inference that that change undermined his suitability for parole. Whether or not, as a merits question, further discovery would perhaps reveal that the parole board would have gone a different way or that the mandatory requirement wasn't part of that recommendation. Let's just assume that the discovery took place, depositions were taken, and it came out exactly as you suggest. It still is nothing but a recommendation to the governor. And it doesn't change his right under the plea agreement to life with a possibility of parole. The key here, again, Judge Kelly, is that. I know I know what your position is. Right. But I don't understand it, given, you know, if the statute had said the governor may not grant parole. That's correct. After this date, then I'd look at it quite differently. But the statute was never changed. The change in the statute was only to require consideration of the underlying offense. Could we talk about ex post facto? That's your second claim. The second claim, yes, is the ex post facto claim. I think where we disagree most with the government is with respect to the second requirement, whether or not Mr. Burnett can plausibly allege that that change in the guidelines, as applied to him, increased his risk of punishment. Under Garner, we know that the presence of discretion does not destroy a litigant's ability to show an increased risk of punishment. Here, even though the parole board retains discretion to grant or deny parole, Mr. Burnett has an increased risk of punishment for the same reason that he has a breach of his plea agreement. Not beyond life. Can you repeat that, please? Not beyond life. In other words, I can't do anything to him after he dies. That's correct. But the sentence isn't the thing that grounds. You have the question of increased risk of punishment. Under Garner and Weaver, you can look beyond the sentence to the conditions. And, in fact, in Weaver, the court looked to good time credit, which isn't part of the sentence. It's outside of the sentence. And it concluded that the reduced opportunity to earn good time credit and, in turn, earn earlier release was sufficient to show an increased risk of punishment. Okay. There's a huge difference between good time credit, because it's just a mathematical calculation. There's not – it's not discretionary. So you're talking about actual additional days in prison when you start changing the good time credit calculation. Here, even when it was recommended that your client be granted parole, he didn't even get past the first stage, because the parole board said no. So they obviously looked at something other than his conduct in prison, because his conduct in prison was pretty good at that point. But you're – again, I don't see that you've argued something that would support the second prong of an ex post facto, because you can't show that there's a significant risk of an increase of his prison time. I agree that good time credits are different. What's material about the way the court analyzed that is the court looked at conditions outside of the sentence and looked at the effective sentence and looked at the reduced opportunity to earn early release. In this case, we're arguing that the November 2013 amendment, which effectively rendered Mr. Burnett unsuitable for parole, has reduced his opportunity to earn early release. And in that way, it increases his risk of punishment for ex post facto purposes. It's all pretty nebulous, isn't it? I mean, it's hopes and dreams and – And that's really the key, I guess, to your argument, is that this is a 12B6. That is the key, and that his pro se complaint, which needs to be liberally construed, does state sufficient facts to support both a breach of his plea agreement and an ex post facto claim. For these reasons, we ask that the court reverse the district court's dismissal order and also vacate the strike under 1915G. Thank you. Thank you. Thank you. May it please the court, Randall Yates on behalf of the state of Oklahoma. This court has already identified a number of the key holes in the due process claim that appellant brings. I would like to start with the quote from Garner where opposing counsel says that the presence of discretion is not dispositive. I'd like to take a step back and write after that in Garner v. Jones. The Supreme Court declared that criminals are on notice, that discretionary parole by its nature is subject to change, and states must have due flexibility in formulating parole procedures. If this is true, then parole rules in place at the time of the crime cannot be implied in a plea agreement. Appellant's due process claim is therefore dependent upon reading something into the plea agreement that isn't there. The district court's decision to dismiss that claim can be affirmed for two reasons. First, the state cannot be bound to things it did not promise. And second, appellant cannot evoke the due process rights that he has in his plea agreement to challenge parole proceedings. Thus, appellant has failed to identify a protectable entitlement necessary to bring a due process claim in the first place. Regarding the ex post facto claims, Your Honor, appellant sentence transformation theory is implausible on its face and doesn't meet the Twombly-Iqbal standards or 12b-6. Well, the argument, I think, is that under the change in the procedures which do apply retroactively to the defendant, so you've got the classic satisfaction right there of an ex post facto law, right? It's applying retroactively. It will apply to Burnett, yes, Your Honor. Yes, right. After he was sentenced, after the plea agreement, so it's retroactive. So then we get to, okay, what effect will it have on him? Is this a breach or possible have any effect on his liberty interest? And he's arguing not that he should be released, as I understand it, but that he should have a fair shot at being considered for parole. That is correct, Your Honor. Your Honor, first, there has been no change in practice. Well, they're marching out and putting in, not in bold, but they're stating definitively that you should look at the crime, the underlying crime that the individual committed. Yes, Your Honor. And they haven't really put that kind of emphasis on it in their prior procedure, right? Well, all we're looking at here is that cut and paste from the parole investigator's report, from their 2013 report to its 2016 report. If you look at the entire report, there's a number of things that's going on. Well, no, I'm talking about the change in procedure. That's what the petitioner is talking about here, is the change in procedure, the parole procedures that are now applied to him, that that has changed. And now the emphasis is look always first at the crime of conviction. Well, the statute says prior criminal history, Your Honor, and I don't think that it says look first to those things. Okay. Was that there before? The, under 332.7, Subjection I, where it says to consider the prior criminal history. Isn't there? That was the statutory amendment, Your Honor. Yeah, okay. So there was a change adding that language, right? Yes, Your Honor. Okay. And isn't that an ex post facto violation? No, it isn't, Your Honor. This is an as-applied ex post facto challenge to parole laws. So what Burnett would have to is allege enough facts that could show that this change in the statute sufficiently increased the risk of his punishment. And, Your Honor, there has been no change in the way that parole investigators have looked at things. If you look at each report, what's in there is the prior criminal history. This is sort of the classic case. I mean, this is, in my view, pretty unusual. The investigator initially, I don't recall the year, but the investigator said this fellow should be released. He's done really or should be considered, excuse me, should be considered for parole, right? Yes. Because he'd been so good in jail, right? Because he had no write-ups while he was in prison, yes. And that was within the last three years. So then the very next time that he's up for parole consideration and after this change, the same investigator, and there's been no write-ups, as I understand, between then and now. Yes, Your Honor. The same investigator says no. Let's, in fact, not talk about his good conduct in prison. Let's talk about the crime he committed in detail. Well, Your Honor, we'd be speculating on what the investigator was thinking, but there are myriad reasons. Just read the report. It's no speculation. But there are myriad reasons why she would change that. That could have nothing to do with the statutory change, Your Honor. She could have said in the past I hadn't given proper consideration, even outside of this statute, that I looked at the 2010 report. It said denied based on his conduct. But if we're at 12B-6 and we have this report, one was a good report and the next one is a bad report, and then the interim is the change in the procedure, isn't that enough to get past 12B-6? I don't believe so, Your Honor. Your Honor, I believe that Burnett has made no factual allegations against any actual decision maker. The only concrete factual allegation made against the parole board is that they denied him parole. And in an as-applied ex post facto challenge to parole rules, it must be much more concrete than that. The statute's mandate to require prior criminal history be considered to a governor's grant of parole is just far too attenuated, even if that came into play in the parole investigator's change. And going back to just the text of the statute, Your Honor, first, the statute does not compel consideration of the incident offense, only prior criminal history. Those have been separate considerations, the incident offense and prior criminal record. But, I mean, you're not suggesting that they don't look at the current criminal offense, are you? Absolutely not. I agree with opposing counsel. It has always been permissive. And not only has it always... In fact, both reports, the 2013 and the 2016, begin with a description of the crime for which he is currently imprisoned, right? That's correct, Your Honor. And that there is also a separate consideration for prior felonies. And that those have always been two separate considerations. So I think basing this speculation on this is why not only did they change their mind because of this, but misread the statute, acted inconsistent with their practices that we can see from the record, and then made it based on that. So it gets even more speculative about a very attenuated process. In addition, not only is it permissive, but it has always been used. You look at the report, and the reports show that it has always been used. And, in fact, I think that the nature of the crime must be considered whether or not the statute exists. The Supreme Court in Greenhall said that factors must be analyzed in light of the nature of the offense. The parole board can't begin to evaluate whether penal interests have been served, or whether parole release is important, if they don't consider the crime. The risk of recidivism must be weighed against the gravity of defense, of the offense. How much deterrence is needed is dependent on what crime is being deterred. And different crimes are rehabilitated differently, Your Honor. And, moreover, the statute must be measured within the context of Oklahoma's entire parole system. If the parole board considered any dynamic factors, along with the nature of the offense, then Burnett's sentence transformation theory falls apart because the sum of the cumulative factors going from one parole hearing to the next would be variable. And he couldn't accurately say that all hope has been taken away because I consider a single immutable factor. And if you look at the reports, the specific dynamic factors complaining of age, time served, behavior, the certificates that he's earned, work reports, those are all still within the 2016 report. And if you look at subsection J, the very next subsection, it says that the parole board shall consider conduct while incarcerated. So that is also another dynamic factor that the parole board must take into account. In addition, Your Honor, if you read the very next sentence of subsection I, it provides a mechanism and what happens when somebody with a violent offense is released on parole, that they're subject to post-imprisonment supervision. So it would be very difficult to say that the first sentence of subsection I made, parole impossible for all violent offenders, and then the very next sentence anticipates that violent offenders will be released. But ultimately, the link between the new rule and parole release is to attenuate it, to sufficiently increase the risk of length of incarceration. Well, I think the point is not release. It's the opportunity, the better chance to be released. In an as-applied ex post facto challenge, Your Honor, to parole laws specifically is that it is the link between the new rule and release. And if that is so far attenuated just on its face, then the court should affirm for that reason alone. And you're relying on green holes for that or what?  And so, as this court has already touched on, what we're talking about is a limited non-binding recommendation that goes to an advisory board, not all of which is appointed by the governor, who does a blind vote and makes a non-binding recommendation to the governor. If the governor chooses to grant parole, the governor then has to report that to the legislature. And in that report, the governor must note the nature of the offense and the length of incarceration. If anything, it is implied that the nature of the offense will be considered, regardless of whether the statute exists. Can the governor grant parole against the recommendation of the parole board? No, the parole board acts as a screen, Your Honor. So, if this is a permissive consideration, what would crafting a remedy look like? Crafting a remedy would look like you may consider the instant offense, but you're not required to now, even though it is a certainty that you will. I think that this remedy would just demonstrate that the new rules are really the same as the old rules, and this just brings up the kind of micromanagement that the court warned us against in the Morales case. For these reasons, Your Honor, I would ask that you affirm. If you have no questions, I'll yield my time. Thank you. Thank you. I'll use 34 seconds. Do you want to use your 34 seconds? No. No. Okay. Thank you both for your arguments this morning. The case is submitted. Our next case for argument is United States v. Ejiofor.